UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
UNITED STATES OF AMERICA

                V                              PRE-SENTENCE RESPONSE
                                                  11 CR 294

DANIEL BADDOUCH

---------------------------------------------------------

TO: PROBATION OFFICER AMANDA DONAT

      With regard to your report dated October 14, 2011 the defense agrees that the base offense level for the crime to which defendant (Baddouch) pleaded guilty is seven. If there were no enhancements this would allow the Court to impose a non-jail sentence since Baddouch has no prior convictions and is therefore in criminal history category I. You have added 14 levels based on an intended loss exceeding $400,000, added another two additional levels because the offense involved the unauthorized use of a social security number and deducted three levels for timely acceptance of responsibility. The result is offense level 20 and criminal history category I resulting in a guideline imprisonment range of 33 to 41 months. For the reasons stated below the defendant disputes both the 14 level enhancement and the two level enhancement.

      Paragraph 2 of the pre-sentence report sets forth the Government's theory of the case which is that individuals would use "straw applicants" to obtain money for themselves, the straw applicant would be paid and usually leave the country, and the people that received the proceeds would not pay back the money that they received. The

defense agrees with this fact pattern except that the evidence in this case includes multiple indications that any money received was going to be paid back. Most of this information is contained in recordings that were secretly recorded by the government and were made at a time when the defendant had no motive to lie.

Baddouch's involvement with this case began when he and another member of the conspiracy had telephone conversations with an undercover agent who was using the name Angel. The third telephone call lasted a total of eight minutes and 21 seconds. Starting at approximately five minutes and twenty five seconds and continuing to approximately six minutes and thirty one seconds there is a discussion of how much money the agent is to be paid and how the money is to be distributed. The speaker tells the agent that **they are still responsible to repay the bank** and says "**we're not burning anybody that's the problem.**"

Subsequent to these telephone calls Angel met with Baddouch at the Staten Island mall and this meeting lasted about one hour. Towards the beginning of this meeting there is a discussion about someone using Angel's name and running up a charge for eighteen hundred dollars at a pool hall. Baddouch agrees to look into this and states that he might dispute the charge. {There is a separate recording to Amex on Feb. 4, 2010 in which Baddouch identifies himself as Angel and states he was never at the pool hall.}

At about nineteen minutes and thirty four seconds into the mall recording Angel directs the conversation toward the amount of money that will be obtained. Baddouch states that Isaac keeps telling him he wants to get $200,000 but Baddouch indicates he does not know the amount. At twenty one minutes and twenty two seconds Baddouch states he is expecting between one and two hundred based on guys who know what they

2

are doing. At twenty four minutes and sixteen seconds Baddouch indicates that the main ones using the money will be Isaac and Mayer and **they're the ones making payments.** The agent then talks about how much Baddouch is going to receive and he indicates it depends on how much they get. If its 200,000 he gets 15 and he mentions the possibility of getting 300,000. At about twenty six minutes and thirty two seconds into the conversation Baddouch talks about the payments that are going to be made, that they are paying twenty five thousand out of their pockets and **don't want the payments to be too much.** (The twenty five thousand appears to be the amount of money being paid to Angel in return for the conspirators using his name on the applications and is coming directly from the conspirators rather than from a bank) At twenty seven minutes and five seconds there is another reference to **paying back the money**. *

    Based on these recordings the amount of money that the conspirators intended to get was one to two hundred thousand dollars since these are the numbers most frequently mentioned. There is just one reference to 300,000. Therefore if the Court bases sentencing on intended loss (assuming that the money was not going to be repaid) the amount should be one to two hundred thousand dollars and at most 300,000. Using these numbers results in either a 10 level enhancement based on a loss of under $200,000 or a 12 level enhancement based on a loss of more than $200,000. This would bring the guideline level down to either 16 or 18.

*(The over-all tenor of the mall tape is that Baddouch is a novice with respect to this type of criminal activity)
.

In this case a loss amount of over $400,000 appears to have been determined by merely adding up the dollar amount of each application. Another reason to reject the 14 level enhancement is that the evidence in this case suggests that the objective of the conspirators was not to get money from multiple banks. However, when one application was rejected they tried again by submitting a new application to a different bank. This is analogous to the case of <u>United States v Deutsch</u> 987 F2d 878 where defendant used one bad check to cover a prior bad check. In that case the Court determined that merely adding up the face amount of each check overstated the actual amount that Deutsch was trying to get.

An additional reason not to base sentencing on an amount over $400,000 is that the government agents encouraged the defendant to try and obtain a larger amount and thereby inflated the loss amount. For example on Feb. 1, 2010 Angel sent an e-mail to Baddouch stating in relevant part **" I am interested in mortgages and large loans!!!"** In narcotics cases making larger and larger purchases of drugs is an accepted investigative tool which enables the authorities to go up the chain and catch the bigger fish. This was not that type of case. The agents knew who the participants were and by pushing for larger amounts the only effect was to magnify the amount of the loss.

On the other hand if the conspirators intended to repay any money that they received then there was no intended loss and no enhancement for the amount of the loss. In addition to the recordings a statement made by Baddouch also indicates that any money received was going to be repaid. On June 23, 2010 Baddouch was driving a vehicle when  Special Agents Vincent Parlatore and George Vuoso  directed him to pull over.  He complied and was interviewed by them. During this interview he admitted to

4

wrongdoing. The agents then prepared a detailed report of this interview. Paragraph 14 of that report states that Isaac Gindi told Baddouch that he wants lawyers involved with the false loan transaction obtained through the use of SA Herrera'a alias identity **and that he has stated that he wants to pay the money back.** This is consistent with what was said in each of the recorded conversations.

If there was no intended loss then loss should be based on actual loss and Paragraph 18 of the pre-sentence report indicates that there was no actual loss to the banks. As indicated above $1800.00 was spent at a pool hall. It is unclear whether this money was lost and whether it is attributable to Baddouch. In any event since the amount is under five thousand dollars pursuant to Section 2B1.1(b)(1)(A) no levels would be added.

In United States v Brach, 942 F 2d 141 the district court determined that loss was the total value of the loan obtained or sought without regard to whether the defendant intended to repay the loan. That decision has since been rejected by various circuits including the second circuit.  United States v Kopp, 951 F2d 521;  United States v Moored, 38 F3d 1419; United States v Shaw, 3 F3d 311. In United States v Ravelo, 379 F3d 266 the Second Circuit approved the use of the aggregate amounts that the defendant would have obtained if he had succeeded on each attempt **in the absence of evidence of contrary intent**. In the present case the statement Baddouch made to the agents and the recorded conversations demonstrate evidence of contrary intent.

United States v Confredo 528 F3d 143 is somewhat similar to the present case. The majority of Confredo's customers were not credit worthy and would not have obtained loans absent false information supplied to the banks by Confredo and his

5

associates for which they received a fee. Some of the customers made payments to the banks and others negotiated settlements with the banks. The Second circuit remanded the case to the District Court to determine the extent, if any, to which Confredo has proven a subjective intent to cause a loss of less than the aggregate amount of the loans in which event the applicable loss calculation should be based only on the intended loss, unless the actual loss is higher. In the present case as indicated above there is significant evidence of a subjective intent to cause a loss of less than the aggregate amount of the loans.

      As to the enhancement for using someone's identity without their knowledge in this case the person whose identity was used was Angel and he was fully aware that his identity was being used and agreed to it. In fact he and his colleagues supplied the factual information necessary to fill out the loan applications. For example in an e-mail dated January 29, 2010 Angel states that he will send his license and passport if you want it. Furthermore, Paragraph 7 of the complaint and paragraph 9 of the pre-sentence report state that on November 23, 2010 ICE agents had faxed over Angel's license and social security card to one of the conspirators. In some instances innocent victims learn that their identity has been taken when the requests for payment start rolling in. In cases like that this enhancement should apply. The present case is the opposite of those cases. Angel was aware his identify was going to be used and fully consented. Hence this enhancement should not apply.

      Although the case agents appear to have not informed Probation about the various statements regarding repayment of the money they did provide the Probation department with a host of unsubstantiated accusations. (See paragraph 36) With regard to the various accusations counsel has not been provided with the documentation necessary to conduct a

6

proper evaluation. It is respectfully requested that the contents of paragraph 36 be deleted from the report.

With regard to the recorded conversations I would assume that the Government will stipulate to the various statements regarding repayment that I have mentioned above. If that does not happen then counsel would request that the probation department listen to the recordings and make an independent determination as to this.

The report also contains some factual inaccuracies which counsel will not comment on because they do not effect the sentencing guidelines.

Finally, since defense counsel received the pre-sentence report less than a week ago it may be necessary to adjourn the sentencing to allow sufficient time for a response and the defense would consent to an adjournment of sentencing for that purpose.

                Respectfully submitted by

                Martin Goldberg
                Attorney for Daniel Baddouch
                672 Dogwood Avenue #183
                Franklin Square, N.Y. 11010
                516 292 0380

Dated: October 20, 2011